NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0573n.06

Case No. 25-5186

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 10, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| AMY LYNN COOK, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: NALBANDIAN, DAVIS, and HERMANDORFER, Circuit Judges.

DAVIS, Circuit Judge. While babysitting a nine-month-old baby girl, Amy Cook recorded herself touching the child's genitalia and photographed the child as she sat on Cook's lap, touching Cook's exposed breasts. Cook pleaded guilty to a single count of production of child pornography. At sentencing, the district court applied several enhancements, two of which—U.S.S.G. §§ 2G2.1(b)(1)(A) and (b)(4)(B)—enhanced Cook's offense level by four points each. The first increase was because the child was under 12 years old. And the second one was because the material portrayed an infant or toddler. On appeal, Cook argues that applying both sentencing enhancements is impermissible double counting. We disagree, so we AFFIRM.

**I.**

*A. Factual Background*

After receiving several cybertips in December 2023, law enforcement learned that Defendant Amy Lynn Cook had uploaded child pornography onto the internet. Law enforcement obtained search warrants for "various electronic service providers." (Plea Agreement, R. 20, PageID 39). The search warrants netted a video and images of Cook sexually abusing a nine-month-old infant.

Law enforcement executed a search warrant at Cook's house in late March 2024. During an interview at her home, Cook told law enforcement that she sold sexually explicit content on the internet, including images of minors who "look[ed] really young, I would say 10 to 12." (R.20, PageID 39). When shown a sanitized image of the nine-month-old infant from the video and images, Cook explained that the baby lived in a neighboring apartment. Cook was babysitting the infant when she took the video and photos. Forensic examination of Cook's cell phone led law enforcement to discover more child pornography, including images and videos of children between five and sixteen years old. In addition to the images, law enforcement found conversations about payments Cook received for sending child pornography to others. In one transaction, Cook sent thirty child pornography images to someone in exchange for $60.

*B. Procedural Background*

A grand jury indicted Cook on five counts: one count for production of child pornography, in violation of 18 U.S.C. § 2251(a); three counts for distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and one count for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Cook entered into a plea agreement with the government and pleaded guilty to the one production count. In her plea agreement, Cook reserved the right to argue

impermissible double counting at sentencing if the district court applied U.S.S.G. §§ 2G2.1(b)(1)(A) and (b)(4)(B) and to appeal any such application. She otherwise waived her right to appeal. The district court accepted Cook's guilty plea.

Before Cook's sentencing, a probation officer prepared a presentence report ("PSR"), which recommended applying the two enhancements. Section 2G2.1(b)(1)(A) would increase Cook's base offense level by four levels because her offense involved a minor who had not yet reached the age of twelve years old (the "age enhancement" or "under-twelve enhancement"). And § 2G2.1(b)(4)(B) would increase her base offense level by another four levels because her offense involved material portraying an infant or toddler (the "infant-or-toddler enhancement"). The inclusion of these two enhancements, along with several others that applied, and a three-level reduction for acceptance of responsibility resulted in a total offense level of 43. With criminal history category I, Probation calculated Cook's guidelines range to be life in prison. But a 30-year statutory maximum applied, so her range was 360 months instead.

Cook objected to the use of both enhancements as impermissible double counting, both in response to the PSR and at sentencing. The government argued that the United States Sentencing Commission ("Commission") "called for or contemplated" applying both provisions in instances like this. (Sent. Tr., R. 43, PageID 195). And the government noted that the infant-or-toddler enhancement is housed with the sadistic-or-masochistic category, not the age category, "further confirm[ing]" that the Commission meant "both [enhancements] to apply, not one or the other." (*Id.*).

The district court overruled Cook's objection. In the court's view, the Commission concluded that while offenses involving victims under twelve years old were "certainly serious and egregious," those with infants were "even more serious" and warranted "an additional

enhancement." (R. 43, PageID 196). From there, the district court substantially varied downward from the 360-month guideline range and sentenced Cook to 276 months in prison and a life term of supervised release.

Cook now appeals.

**II.**

"A district court's sentencing decision must be procedurally and substantively reasonable." *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). Relevant here, procedural reasonableness focuses on the method that the district court used to arrive at the length of a sentence. *Id.* To ensure procedural reasonableness, the district court must "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629–30 (6th Cir. 2008) (quoting *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)). Because Cook's double-counting claim challenges the district court's calculation of the guidelines range, it is an attack on the procedural reasonableness of her sentence, which we review under an abuse-of-discretion standard. *United States v. Gates*, 48 F.4th 463, 469, 473 (6th Cir. 2022).

Nonetheless, we review de novo the district court's application of the sentencing guidelines. *Id.* at 473. And we review its factual conclusions for clear error. *United States v. Clark*, 11 F.4th 491, 493–94 (6th Cir. 2021).

**III.**

Cook argues that the district court's application of both the under-twelve enhancement and the infant-or-toddler enhancement resulted in impermissible double counting. We disagree.

"[I]mpermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into [her] sentence in two separate ways." *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017) (citation modified). Not all double counting is impermissible, however. *United States v. Fleischer*, 971 F.3d 559, 570 (6th Cir. 2020). So, to analyze this issue, we follow a two-step inquiry: (1) Did double counting occur? *Duke*, 870 F.3d at 404. And (2) if so, was it impermissible? *Id.*

When assessing whether double counting occurred, we ask whether both provisions cover "precisely the same aspect of the conduct." *United States v. Hensley*, 110 F.4th 900, 905 (6th Cir. 2024) (citation modified). Yet if the "separate enhancements penalize distinct aspects of the defendant's conduct" to punish "conceptually distinct kind[s] of harm," then there is no double counting. *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007) (citation modified).

Sections 2G2.1(b)(1)(A) and 2G2.1(b)(4)(B) punish conceptually distinct kinds of harm, so there is no double counting. The enhancement in § 2G2.1(b)(1) is age-specific. *See* U.S.S.G. § 2G2.1(b)(1). Offenses involving a minor who has not yet "attained the age of twelve years" require a four-level increase to a defendant's offense level, whereas offenses with minors who are at least twelve but under sixteen require a two-level increase. *See id.* § 2G2.1(b)(1). Thus, all that is necessary for this enhancement to apply is a minor victim meeting a certain threshold: either being under the age of twelve or having reached twelve but under sixteen.

The enhancement in § 2G2.1(b)(4)(B) differs from the age-twelve enhancement because it targets the particular vulnerabilities of a subset of minors—infants and toddlers. We have

considered this enhancement and its interaction with § 2G2.1(b)(1)(A) at least once before—albeit in an unpublished order flagged by both parties. That case, *United States v. Manigault*, involved a defendant who, like Cook, pleaded guilty to production of child pornography (and receipt of it, too). No. 21-5114, 2021 U.S. App. LEXIS 21245, at *1 (6th Cir. July 16, 2021) (order) (per curiam). And, like here, the district court overruled Manigault's objection that the application of § 2G2.1(b)(1)(A) was "duplicative" of § 2G2.1(b)(4)(B). *Id.* at *11.[1] We affirmed that decision, concluding that the "victim's youth" had not been "impermissibly factored into Manigault's sentence in more than one way." *Id.* at *12; *see also United States v. Sanderson*, No. 21-5900, 2022 WL 1133114, at *4 (6th Cir. Apr. 18, 2022) (affirming sentence where the district court applied five sentencing enhancements, including §§ 2G2.1(b)(1)(A) and 2G2.1(b)(4)(B)—the only two enhancements the defendants did not challenge). Instead, we stated, "his sentence was enhanced because the victim was under twelve years old and was also a toddler." *Manigault*, 2021 U.S. App. LEXIS 21245, at *12. We made two observations in this regard: First, while all toddlers are "necessarily" under twelve, not all minors under twelve are toddlers. *Id.* Second, putting aside "their age difference," toddlers and minors under twelve have different physical characteristics, like "size, strength, communication ability, and ambulatory skills." *Id.* In other words, infants and toddlers are vulnerable in even more ways than older children. And this added element of defenselessness translates to a different tier of egregiousness that warrants additional punishment.

A few of our sister circuits share this view. For instance, in *United States v. Wright*, the defendants had argued that an application note for the vulnerable-victim enhancement in U.S.S.G. § 3A1.1 barred application of that enhancement "on account of the victims' infancy" when they

---

[1] The Lexis citation for *Manigault* erroneously refers to "§ 2G2.1(b)(2)(B)" as the infant-or-toddler enhancement. This appears to be a scrivener's error. The order publicly available on PACER properly cites § 2G2.1(b)(4)(B).

had already received a four-level increase under § 2G2.1(b)(1)(A). 373 F.3d 935, 943 (9th Cir. 2004). In rejecting this argument, the Ninth Circuit concluded that the "victim-under-12 adjustment" did not "fully incorporate[]" the "victims' vulnerability." *Id.* (citation modified). The court explained that because the under-twelve enhancement did not account for the "especially vulnerable stages of childhood," there was "no double-counting of age" by "considering infancy or the toddler stage as an additional vulnerability." *Id.* Indeed, it went on to say, while "the characteristics of being an infant or toddler tend to correlate with age," those characteristics may "exist independently of age" and, thus, they are "not the same thing as merely not having 'attained the age of twelve years,'" as required under § 2G2.1(b)(1)(A). *Id.*

The *Wright* court's reasoning closely mirrored *Manigault*'s in highlighting the particular attributes of toddlers such as their "extreme youth," "small physical size," "inability to communicate," "inability to walk," and other tangible differences. *Id.* The court went on to add that "the traits and characteristics associated with infancy and the toddler stage can exist independently of age." *Id.*; *see also United States v. Jenkins*, 712 F.3d 209, 213–14 (5th Cir. 2013) (relying on *Wright* to hold that age enhancement and vulnerable-victim enhancement both could be applied); *but see United States v. Dowell*, 771 F.3d 162, 175 (4th Cir. 2014) (holding that the child pornography guidelines fully accounted for age-related considerations and thus age and vulnerable-victim enhancements both could not be applied).

Recognizing the distinct vulnerability of infants and toddlers and the attendant heinousness of their sexual victimization is consistent with the Sentencing Commission's reason for adding the infant-or-toddler enhancement. Before 2016, § 2G2.1(b)(4) referred only to "material that portrays sadistic or masochistic conduct or other depictions of violence." *See United States v. Johnson*, 784 F.3d 1070, 1073 (7th Cir. 2015); U.S.S.G. supp. to app. C, amend. 801, at 132. But amid a

circuit conflict over whether a defendant who received an age enhancement under § 2G2.1 also could receive a vulnerable-victim adjustment under § 3A1.1 "when the victim is extremely young and vulnerable, such as an infant or toddler," the Commission amended § 2G2.1(b)(4) in 2016. U.S.S.G. supp. to app. C, amend. 801, at 134. The amendment shifted the "sadistic or masochistic conduct" provision to § 2G2.1(b)(4)(A) and added an enhancement for offenses with material portraying "infants or toddlers" as § 2G2.1(b)(4)(B). *Id.* at 135. It also added an application note explaining that the vulnerable victim adjustment in § 3A1.1 should not be applied if the infant-or-toddler enhancement of § 2G2.1(b)(4)(B) applies. *Id.*; U.S.S.G. § 2G2.1 cmt. n.4.

We find this line of reasoning from *Manigault*, *Wright*, and the Commission persuasive. The age-twelve enhancement and the infant-or-toddler enhancement seek to punish conceptually distinct kinds of harm. *See Eversole*, 487 F.3d at 1030. The age-twelve enhancement targets the general vulnerability of minors under that age. The infant-or-toddler enhancement, on the other hand, targets vulnerabilities distinct to infants and toddlers. In doing so, it addresses the absolute defenselessness of this separate group of victims. The application note barring overlap between the vulnerable-victim and infant-or-toddler enhancements strengthens this view. U.S.S.G. § 2G2.1 cmt. n.4. That note compels the conclusion that the Commission intended § 2G2.1(b)(4)(B) to cover the increased vulnerability of infants and toddlers that the child pornography guidelines did not address before 2016. Were the infant-or-toddler enhancement applied in lieu of the under-twelve enhancement, it would have no impact. Indeed, since all infants and toddlers are under twelve years old, the inclusion of the infant-or-toddler enhancement would be rendered superfluous. And it is particularly compelling that the infant-or-toddler enhancement neighbors the sadistic-or-masochistic enhancement—not the age enhancement. That position signals that the purpose of the infant-or-toddler enhancement is at least partially driven by the depraved nature of

offenses against infants and toddlers. Bolstering our determination here is the Commission's recognition of near-universal circuit agreement that "depictions of the sexual abuse or exploitation of infants or toddlers involving penetration or pain portray sadistic conduct." U.S.S.G. supp. to app. C, amend. 801, at 135. So, because the two enhancements seek to punish distinct harms, we conclude that no double counting occurred. As a result, we need not address whether any such double counting is permissible. *See United States v. Pagan*, No. 24-4102, 2025 WL 2939513, at *4 (6th Cir. Oct. 16, 2025) ("We need not proceed past the first question here.").

## IV.

For the foregoing reasons, we AFFIRM.